**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **V.** | * | **CRIMINAL NO. PWG-19-0137** |
| **DESMOND RINGGOLD** | * | |

**MEMORANDUM AND ORDER**

Currently pending are Defendant's Motion for Review of Detention Order and/or Request for Temporary Release Due to Health and Safety Concerns (ECF No. 540) ("Motion"), Government's Response in Opposition to Defendant's Motion for Reconsideration of the Detention Order (ECF No. 546) ("Opposition"), Defendant's Reply to Government's Opposition to Defendant's Motion for Review of Detention Order (ECF No. 547) and, in accordance with the court's Order for Supplemental Briefing (ECF No. 551)**,** Defendant's Supplemental Letter (ECF No. 559)(under seal) and ECF No. 560 (redacted version).  In addition, the court ordered the production of the defendant's medical records from Chesapeake Detention Facility ("CDF") where the defendant is detained (ECF No. 552) , and those medical records (ECF No. 557) (under seal) have been reviewed by the court.  For the reasons stated below, the Motion (ECF No. 540)  is denied.

A detention  hearing was held in this case on May 2, 2019.  After both parties were fully heard, I detailed my reasons for issuing a detention order on the record at the hearing and I issued an Order of Detention summarizing those reasons (ECF No. 183).  Pursuant to 18 U.S.C. § 3142(f), a detention hearing may be reopened if the "judicial officer finds that information exists that was not known to the movant at the time of the [detention] hearing and that has a material bearing on the issue whether there are conditions of release that will

reasonably assure the appearance of such person as required and the safety of any other person and the community."  Defendant argues that the COVID-19 Virus Pandemic constitutes changed circumstances warranting the defendant's release, particularly in light of the fact that he has a history of blood clots which affected his lungs for which he takes medication. (ECF No. 540 at 1-2).  In support of his motion, the defendant asserts that the inability to practice social distancing in jails makes the transmission of the virus more likely, and that pretrial detention facilities are poorly equipped to manage a crisis of this nature.  Defendant also states that although the number of COVID-19 cases at CDF are not as great as at other institutions, the virus presents a compelling threat to the nation's prison population, particularly those with compromised health issues  (Id. at 2-3).   Because concerns relating to the COVID-19 pandemic were not present at the time of the defendant's original detention hearing, the court agrees that § 3142(f) allows a reopening of the detention decision.

The Court "recognize[s] the unprecedented magnitude of the COVID-19 pandemic" and acknowledges that it can constitute new information warranting a reconsideration of a detention order.  United States v. Martin, Crim. No. PWG-19-140-13, ECF No. 209 at  4 (D. Md. Mar. 17, 2020).   Notwithstanding these circumstances, however, the decision whether to release an individual pending trial still requires an individualized assessment of the factors identified in the Bail Reform Act, 18 U.S.C. § 3142(g).  Id. at 5.  In that regard, I have reviewed the bases for my detention order, and I have reweighed the factors under the Bail Reform Act in light of the current public health emergency, the current COVID-19 situation at the facility where the defendant is being held,  the defendant's existing medical condition, and the defendant's proposed conditions of release.  The record in this case regarding the offenses charged and the defendant's background compel me to conclude that conditions of release cannot be fashioned to

address community safety, notwithstanding the potential risk of exposure to the virus that the defendant faces while detained.  The court fully analyzed  the § 3142(g) factors at defendant's detention hearing.  As noted in the court's detention order, and detailed on the record at the hearing both by the government and the court, an analysis of these factors overwhelmingly supported a finding that detention was appropriate.

The defendant is currently charged in a Third Superseding Indictment with Conspiracy to Distribute Controlled Substances (Heroin, Fentanyl and Cocaine) Resulting in Death and Serious Physical Injury and Distribution of a Controlled Substance Resulting in Serious Physical Injury in violation of  21 U.S.C.  §846 and §841, respectively. The maximum penalty is life imprisonment.  The government was entitled to the presumption in favor of detention pursuant to 18 U.S.C.  §3142(e), which presumption was supported by the record in this case.  The evidence supporting the charges against the defendant is strong.  There were wiretaps on multiple phones, including those used by the defendant, which revealed that the defendant was a manager of this sophisticated and expansive drug organization. The defendant monitored the pace of drug sales by the distributors and resupplied the distributors when they ran out of drugs. According to the government, the defendant helped to distribute multiple kilograms of heroin cut with fentanyl and took efforts to avoid law enforcement detection.  During the course of the defendant's participation in the conspiracy, multiple people overdosed from drugs distributed by members of the conspiracy.  (ECF No. 546 at  2-3).

The history and characteristics of the defendant also supported the detention order.  At the time of these offenses, the defendant was on probation for possession with intent to distribute narcotics.  In addition to this narcotics conviction, the defendant has two other narcotics convictions.  The defendant's history of non-compliance with community supervision

significantly undercuts any argument by the defendant that he will comply with conditions of release. Based upon all of the above, the court concluded at the time of the detention hearing, by clear and convincing evidence pursuant to § 3142, that there were no conditions of release which would reasonably assure the community's safety. (ECF No. 183).

In his Motion and supplement, defendant argues that he should be released because 1) his living conditions at CDF do not allow for social distancing and CDF will be unable to contain an outbreak of the virus; 2) he is at a greater risk of an adverse outcome should he contract the virus because he has a history of blood clots affecting his lungs; and 3) he has proposed release conditions to address concerns regarding danger to the community. (ECF Nos. 540 at 1-4). As this court has previously noted, the public health emergency created by COVID-19 is a significant concern for all those in detention facilities during this global pandemic. The court is concerned for the defendant, and for all others both inside and outside of the detention facility. These concerns, however, do not constitute a basis upon which to release an individual who this court has determined poses a threat to the safety of the community unless the court concludes that the conditions at the detention facility coupled with the defendant's medical conditions warrant a reconsideration of that conclusion.

As to procedures in place at CDF, the government has proffered that comprehensive precautionary measures have been instituted at CDF to avoid a COVID-19 outbreak. (ECF No. 546 at 6-13). Other than noting that social distancing is impossible at CDF, the defendant has not made any specific allegations regarding the conditions at CDF or that any particular practices at CDF are insufficient to address the needs of detainees. Defendant observes that, despite the measures taken at CDF, that there are still a few positive cases, albeit far fewer than at other institutions. Defendant asserts that inmates are not tested and employees have been instructed to

test on their own if they experience symptoms. (ECF No. 547 at 2).  Defendant's argument that the conditions at CDF will become worse and that the number of cases will continue to rise is speculative at this time and does not support his request for release.  Notwithstanding defendant's assertions, the court cannot conclude, on this record, that the conditions at CDF or its COVID-19 protocols are so inadequate as to warrant defendant's release.

Nor has defendant made any specific argument, let alone factual proffer, as to why his medical condition is not being adequately addressed.  Indeed, the defendant's medical records clearly establish that CDF has been attentive to the defendant's needs and do not reflect any current, acute needs of the defendant.[1]  Consequently, although the court is mindful of the fact that the defendant's condition may expose him to an increased risk of complications if infected with the virus, that fact alone does not support a reconsideration of the defendant's detention order.[2]  As noted by the government, the court has recently denied motions for release where detainees have claimed that they had medical conditions that made them uniquely vulnerable to COVID-19, but they have not established that those conditions warrant a reconsideration of an order of detention.  (ECF No. 546 at 1-2).

The court has also considered the defendant's proposed conditions of release (ECF No. 559), and notes that those proposed conditions of release, which include the defendant residing out of state with a family member as a proposed third party custodian, are inadequate to address concerns regarding community safety.   Even if the proposed third party custodian and the

---

[1] Defendant notes, without further elaboration, that his medical records do not indicate if a follow up appointment which was recommended actually occurred.  (ECF No. 560 at 1).  The court notes that if the defendant and his counsel have particular concerns about his medical care, they should bring them to the attention of medical staff at CDF.

[2] For purposes of considering defendant's motion, the court accepts defendant's proffer that his specific medical condition puts him at greater risk of complications if he contracts the virus, even though defendant has not offered any medical documentation or support for that argument.

residence were within this court's jurisdiction, the court concludes now, as it did at the detention

hearing in this case, that defendant's proposed conditions of release are inadequate to address

community safety concerns.  Notably, the fact that defendant was on probation for narcotics

offenses at the time he allegedly committed these offenses undercuts the argument that the

defendant will comply with release conditions. As the court found at the detention hearing in this

case, there are no conditions or combination of conditions which will reasonably assure the

community's safety.  (ECF No. 9).

In conclusion, the defendant has not presented any new information that warrants a

reconsideration of my Order of Detention in accordance with 18 U.S.C. § 3142(f).[3]   Based upon

the foregoing, the court concludes that the circumstances proffered by the defendant do not

constitute a basis upon which to release an individual who the court has determined poses a

threat to the safety of the community.  Accordingly, Defendant's Motion (ECF No. 540)

is denied.

Date:_5/22/20_____                    _____/s/_____
                                      Beth P. Gesner
                                      Chief United States Magistrate Judge

---

[3] Although the heading of defendant's motion notes that he is seeking temporary release pursuant to 18 U.S.C. §3142(i),  the defendant has not offered any argument in support of that request.  The court, however, has considered release under that section and has determined that the defendant has not satisfied the "compelling reason" standard warranting his temporary release pursuant to §3142(i).  The court notes that it has herein broadly employed the analysis suggested by the Fourth Circuit in United States v. Creek, No. 20-4251, Doc. 18 (4th Cir. Apr. 15, 2020) in considering COVID-19 based requests for temporary release under §3142(i), even though the Creek order did not explicitly apply this analysis to other provisions of the Bail Reform Act.